The plaintiff brought this suit against defendant for compensation at the rate of $20 per week for a period of 400 weeks for total and permanent disability, subject to a credit for the amount of compensation already paid, plus medical expenses not exceeding the sum of $500. The claim is based on an alleged disability which plaintiff claims resulted from an operation for a hernia, which hernia was sustained while in the employ of defendant company. The trial judge rendered a judgment in favor of plaintiff for compensation for a period of not exceeding 400 weeks at $20 per week, less the compensation already paid, plus a small item for medical expenses. The defendant has appealed.
While the defendant does not admit that plaintiff sustained a hernia in the course of his employment with the company, it seems to be practically conceded by defendant that the hernia was sustained by plaintiff while in its employ, as there is in the record a copy of a report kept by defendant wherein the statement is made that plaintiff reported the accident on February 27, 1945, and on the next day, the statement is made in the report that the hernia is to be listed as a company case. An operation was performed on plaintiff by the company doctor on March 6, 1945, in order to correct the hernia. The record shows that plaintiff was put back on light work on April 30, 1945, and was put on his regular work under the advice of the company doctor on May 16, 1945, and continued his regular work until his employment was terminated on August 4, 1945, on account of his work running out at the plant.
Plaintiff was doing engineering work for the defendant company, consisting of running lines and levels, and setting up stakes usual to such work. He carried his surveying instruments weighing 20 or 25 pounds, and also drove stakes with a hammer, and, of course, did considerable walking in connection with his work. The medical record kept by defendant company shows that after plaintiff went back to work on his regular duties in the middle of May, 1945, he reported to the medical office on June 5th following complaining of some pain in the region of the scar left by the hernia operation, but no recurrence of the hernia was found. The medical report further shows that plaintiff again reported to the office on June 22nd and the company's *Page 73 
medical record of that day states: "Reported in some swelling and tenderness of cord. Seen by Dr. Cooper. Referred to Dr. McHugh for final examination".
Dr. McHugh, who operated on and treated plaintiff for some time after the operation was performed, expressed the opinion that as he could find no cause for the pain and tenderness, he was compelled to accept plaintiff's statement in this respect. The doctor did not question the honesty and sincerity of plaintiff when he made these complaints of pain and discomfort, and therefore concluded that plaintiff is suffering from some kind of neurosis. He also conceded that there could be an impingement or incarceration of a nerve in the scar tissue which could cause tenderness and discomfort, but he could find no evidence of such a condition.
Plaintiff was examined by Dr. Rabalais on August 20, 1945, at his own request, and this doctor found a tender spot in the lower part of the operative scar where the spermatic cord passes out through the inguinal ring, and the doctor expressed the opinion that the tenderness and pain were probably due to scar tissue in the region or to the incarceration of a nerve in the scar. The doctor expressed the opinion that the pain and tenderness will restrict plaintiff from doing heavy manual labor but that he is able to do light work requiring no heavy lifting or excessive exercise. The doctor admitted that he could find no anatomical cause for the pain, and, of course, had to rely on the statements of plaintiff in forming his conclusion as to the existence of pain and tenderness.
Dr. McVea examined plaintiff one time, and while he could find no objective symptoms for the pain and tenderness complained of, he thought that plaintiff is associating in his mind the hernia and the pain which he felt while doing hard work and imagines that this pain still exists.
Dr. McVea expressed the opinion that plaintiff can do the same type of work he was doing before and after sustaining the hernia; that the type of work should not aggravate the pain, but the doctor did state that if hard work made plaintiff believe that the pain was increased, insofar as plaintiff is concerned, the pain is real.
Plaintiff testified that when he went back to work on light duty after the operation for the hernia, he did not carry his surveying instruments or do the hard part of his work for two or three weeks; that he then went back to the same kind of work he was doing before he got hurt, but the tender spot in the operative scar continued to be very sensitive when he was on his feet, and he went to the first aid station several times and complained of the pain and swelling. On being asked whether the pain was severe or he was just conscious of pain, he stated: "Sometimes it was really severe and sometimes it would show a swelling in that region and the condition still exists".
Plaintiff testified that after his employment was terminated with the defendant company the first part of August, he rested for the remainder of that month, and about the first of September, he took a job with an engineering company and did some surveying work around Crowley for a few weeks; that the work he was doing there was harder work and required walking over rice fields and through swamps; that he could not do the work and had to see a doctor in Crowley who gave him some light treatment to relieve the pain so he could sleep at night. He had to give up his job and went to the Veterans' Hospital at Alexandria about the first of November and remained there for a month or so.
The claims and statements made by the plaintiff must be largely relied on if as a matter of fact he is disabled from doing the type of work which he was doing when he sustained the hernia. He admits doing his regular work with the defendant company for several weeks after he got up from the hernia operation, but he claims during that time he had tenderness and pain in the operative scar when he would stand on his feet and walk for long periods of time, and these statements are consistent with his acts in reporting this condition to the medical office of the company from time to time as shown by the company's medical reports. Plaintiff endeavored to work for another company in Crowley, but according to his testimony above referred to, he could not hold out at the kind of work which he attempted to do and was compelled to take a rest. He stated that if *Page 74 
the defendant company would offer him the same kind of work at the same rate of pay or better, he would accept the job and believed that he could possibly do the kind of work he was doing when he was injured. He seems to be fair and consistent in his statements and claims, and we see nothing in the record to justify the belief that he is a malingerer. If what he says is true with reference to the pain and tenderness in the scar tissue when he does hard work then under the decisions defining total permanent disability, he has made out his claim. While he is able to do some kind of work such as that of a salesman, which he is now doing and making less than one half what he was earning in his former position, under the interpretation placed by the courts on the Compensation Law, he is disabled from doing the type of work which he is qualified to do by training and experience.
None of the doctors who examined plaintiff seemed to doubt his statements regarding pain and tenderness in the region of the operative scar, and the trial judge must have believed plaintiff's testimony relative to his claims of pain when he does hard work or stands on his feet for long periods of time.
Finding no manifest error in the judgment appealed from, the same is hereby affirmed at the cost of the defendant in both courts.